```
                    UNITED STATES DISTRICT COURT

                 FOR THE DISTRICT OF SOUTH CAROLINA

                         CHARLESTON DIVISION


United States of America,      ) June 3, 2019
                               )
              Plaintiff,       ) Charleston, SC
                               )
                               )
         vs.                   )
                               )
Amir Golestan                  ) Case no(s).:2:19cr00441-DCN-1
                               )
              Defendant.       )
_____)
United States of America,      )
                               )
              Plaintiff,       )
                               )
                               )
         vs.                   )
                               )
MICFO,                         ) Case no(s).:2:19cr00441-DCN-2
                               )
              Defendant.       )
_____)


                  TRANSCRIPT OF INITIAL APPEARANCE

             BEFORE THE HONORABLE MARY GORDON BAKER
             UNITED STATES MAGISTRATE JUDGE, presiding


A P P E A R A N C E S:

For Plaintiff:       NATHAN S. WILLIAMS, ESQUIRE
                     U.S. Attorneys Office
                     151 Meeting Street, Suite 200
                     Charleston, SC 29401


For Defendants:      EDWARD B. DANIEL, ESQUIRE
                     P.O. Box 856
                     Charleston, SC 29402
```

```
                    RECORDED BY CHONDRA WHITE
     TRANSCRIBED BY TERESA B. JOHNSON, CVR-M-CM, RVR, RVR-M
                    U.S. District Court Reporter
                 300 E. Washington Street, Room 304
                       Greenville, S.C. 29601


Proceeding recorded by electronic sound recording, transcript
produced by transcription service.
```

**P R O C E E D I N G S**

(Proceeding begins at 1:36 p.m.)

**THE COURT:** All right. Mr. Williams, you want to call the first case?

**MR. WILLIAMS:** Yes, Your Honor. May it please the Court. The first case on the docket is 2:19cr441, United States of America versus Amir Golestan and MICFO LLC. Your Honor, he's in here in court on an initial appearance. I believe Mr. Daniel represents him, possibly just for a special appearance.

**THE COURT:** All right. Mr. Daniel, is that correct, only a special appearance today?

**MR. DANIEL:** No, Your Honor. It's going to be a general appearance.

**THE COURT:** Oh, general appearance.

**MR. DANIEL:** Yes.

**THE COURT:** Good. Good.

So let me tell you, Mr. Golestan: You're in federal court today for your initial appearance because a federal grand jury has returned some charges against you. You're here for this initial appearance on arraignment only. This is not your trial. We're here to make sure you understand your rights -- you already have an attorney. You need to understand the charges fully and the maximum penalties you're facing on those charges -- and address the issue of bond, if appropriate, in your case.

1           So first, Mr. Golestan, I want to tell you that you
2  have the right to remain silent. Anything you say, sir, can and
3  will be used against you, either in this court hearing or in
4  future court hearings. Do you understand that, sir?
5           **THE DEFENDANT:**  Yes, Your Honor.
6           **THE COURT:**  All right. Have -- and -- and Mr. Daniel
7  will be in the case and will represent you for the duration.
8  Have you received a copy of the indictment, Mr. Golestan?
9           **THE DEFENDANT:**  Yes, Your Honor.
10          **THE COURT:**  Have you had the chance to read it?
11          **THE DEFENDANT:**  Yes, Your Honor.
12          **THE COURT:**  And go over it with Mr. Daniel?
13          **THE DEFENDANT:**  Yes, Your Honor.
14          **THE COURT:**  All right. Do you understand the
15 charges?
16          **THE DEFENDANT:**  Yes, Your Honor.
17          **THE COURT:**  All right. Mr. Williams, if you could
18 give us the maximum penalty?
19          **MR. WILLIAMS:**  Yes, Your Honor. As the indictment
20 sets forth, there are 20 counts of wire fraud. They are all
21 punishable by the same penalty, that is: a maximum term of
22 imprisonment of up to 20 years; a maximum fine amount of
23 $250,000; three years of supervised release; and a 100-dollar
24 special assessment per conviction.
25          **THE COURT:**  All right. Do you understand the maximum

1  penalties you're facing, sir?
2       **THE DEFENDANT:**   Yes, Your Honor.
3       **THE COURT:**   All right. I'm going to ask the clerk of
4  court to enter a "not guilty" plea for you today. That reserves
5  your right to trial. It also reserves your right to review the
6  evidence the government has against you.
7       There is a form. Mr. Daniel, if you'll come get it
8  and have him sign it for his "not guilty" plea.
9       (There is a pause.)
10      **THE COURT:**   Thank you. What's the government's
11 position on bond for Mr. Golestan?
12      **MR. WILLIAMS:**   Your Honor, obviously, we issued a
13 summons in the case, but we are not asking for detention.
14 Understanding that, Your Honor, there is a significant loss
15 amount involved in the case that drive a wide yield with the
16 imprisonment guideline range. Given that possibility, we think
17 that a secured bond in some amount to be appropriate.
18      We also would ask that the defendant turn over any
19 and all passports he may have. And we have some concerns about
20 his traveling outside of the country, should he request
21 permission.
22      **THE COURT:**   All right. Mr. Daniel, I'll let you be
23 heard. First of all -- well, first of all, also, I didn't ask:
24 Is he also appearing on behalf of the corporation today?
25      **MR. DANIEL:**   Yes, Your Honor. I am sorry --

1   **THE COURT:** All right. So, then, he'll have to sign
2   a separate plea slip as CEO of MICFO.
3   **MR. DANIEL:** Yes.
4   **THE COURT:** I take it -- am I pronouncing it
5   correctly? MICFO? MICFO?
6   **MR. DANIEL:** MICFO.
7   **THE COURT:** MICFO Inc. -- or LLC. Mr. Williams,
8   there are the same charges against the corporation as against
9   Mr. Golestan; correct?
10  **MR. WILLIAMS:** Right.
11  **THE COURT:** All right. And you understand the
12  corporation's charges too, Mr. Golestan?
13  **THE DEFENDANT:** Yes, Your Honor.
14  **THE COURT:** All right. And what is the maximum
15  penalty for the corporation, which will be a fine, obviously?
16  **MR. WILLIAMS:** Your Honor, it would be the same
17  although --
18  **THE COURT:** Well, not imprisonment, right?
19  **MR. WILLIAMS:** Correct.
20  **THE COURT:** All right. So you understand the maximum
21  penalty for the corporation, as well?
22  **THE DEFENDANT:** Yes, Your Honor.
23  **THE COURT:** All right. And did he put "as CEO" on
24  it? Did he sign it -- I would just put -- if you don't mind,
25  your name, as well as "as CEO" or "CEO," so it will be a "not

1  guilty" plea for both the corporation and Mr. Golestan.
2       (There is a pause.)
3            **THE COURT:**   All right. And Mr. Daniel, I'll let you
4  be heard on the matter, first, of the secured versus unsecured
5  bond.
6            **MR. DANIEL:**   Yes, Your Honor. Your Honor, I -- we
7  really don't see any need for a secured bond. First of all,
8  I've been representing him now on this matter for some nine
9  months. We've got -- the matter was investigated. And then the
10 file was closed. And then it was reopened again. First, Nelson
11 Mullins was representing Mr. Golestan for years on various
12 civil matters that has come along. He's been a long-standing
13 client of the firm.
14           Any bond he has to post, Your Honor, would just take
15 away from his ability to pay attorneys fees and pay child
16 support and what he's got to pay otherwise. Because as a result
17 of these things, he's gotten separated from his wife and his
18 children.
19           **THE COURT:**   And I take it that the business of the
20 corporation is more than just the narrow conduct alleged in the
21 complaint -- in the indictment?
22           **MR. DANIEL:**   Yes, Your Honor. That's a fraction, a
23 small fraction, but that's been a fraction of the business.
24 Matter of fact, if the Court's looked at the indictment, which
25 is the American Registry for Internet Numbers, they've allowed

1  him to continue in business. He's got a very legitimate
2  business that's done very well providing cloud services to some
3  national and international firms, which the Court would know
4  the names of: Fortune 500, Fortune 50, Fortune 100 companies.
5          **THE COURT:**   All right. Any further comment from the
6  government on the nature of the secured versus unsecured bond,
7  in response to what Mr. Daniel said?
8          **MR. WILLIAMS:**   No, Your Honor.
9          **THE COURT:**   All right. I'm going to put you on a
10 very high bond, but an unsecured bond. All right. I'm going to
11 put you on a 500,000-dollar unsecured bond. It's unusual for
12 you to have no criminal history. This is your first time in
13 federal court. So I'm not going to make you put up security,
14 but you do have to make promises to me in return for that
15 500,000-dollar unsecured bond. And if you do not abide by all
16 of your conditions of bond, then not only could your bond be
17 revoked, but the government would come after you for a judgment
18 in the amount of $500,000. So I'm putting a significant amount
19 on there so it is your incentive not -- as opposed to putting
20 up security.
21         Now, let me hear you, Mr. Daniel, on -- I understand
22 there is some travel involved with his work. It is unusual for
23 someone to keep a passport while they are on their federal
24 criminal charges.
25         **MR. DANIEL:**   Yes, Your Honor. And Your Honor, what

1  we -- he's continuing to run the business. It has been a -- it
2  has been a lot -- it's put a dent in his business. It's been
3  more difficult to manage the business. But that part of that --
4  part of his business is --
5       **THE COURT:**   Is what?
6       **MR. DANIEL:**   -- part of -- I'm sorry, Your Honor --
7  part of his business is in South Korea. So he does need, from
8  time to time, to go to South Korea and work with his people
9  over there.
10       **THE COURT:**   And does he have anyone in the business
11  to substitute for him, if I didn't give him that?
12       **MR. DANIEL:**   Some of the key people, Your Honor, as
13  a result of this, has left. His -- the chief technology officer
14  and CFO have left. Those are the ones that have been dealing
15  with the South Korea -- South Korean affiliate. And so that's
16  been part of the problem. He really needs to go over there and
17  try to calm -- give a calming hand, if you will, to the
18  employees there and the contractors there.
19       **THE COURT:**   Let me ask this: Has he been going out
20  of the country while -- well, when did he know the
21  investigation was started against him or his company?
22       **MR. DANIEL:**   For the past, at least past nine months
23  -- or more than that?
24       **THE DEFENDANT:**   Yes, sir.
25       **MR. DANIEL:**   For the past nine to ten months,

1  Your Honor.
2         **THE COURT:**  And has he been going in and out of the
3  country during that time period and coming back?
4         **MR. DANIEL:**  Yes. Yes, Your Honor. Yes.
5         **THE COURT:**  All right. Mr. Williams, you want to be
6  heard on Mr. Daniel's comments about his travel and keeping the
7  passport?
8         **MR. WILLIAMS:**  Your Honor, I would just say that I
9  believe this defendant did not believe he would be indicted.
10 And although he had --
11        **THE COURT:**  Do you have a basis for that?
12        **MR. WILLIAMS:**  Yes, our interviews with him where he
13 did not disclose criminal conduct or willing to speak with us.
14 My impression during his --
15        **THE COURT:**  Was he represented during those
16 interviews?
17        **MR. WILLIAMS:**  Yes. And my impression is, is he
18 thought he would evade any civil process or criminal
19 indictments, and I think that is consistent with what he had
20 told investigators through his interviews. Second, Your Honor,
21 I understand he has a business abroad. I don't know why he has
22 to be the one to leave the country and why those people can't
23 come see him here. And if anything, Your Honor, the
24 diversification of his business, the outside the country, I
25 think, shows that he has an ability to leave the country and a

place to go that would be outside of the country, perhaps outside of our extradition process where he would not only have business and be able to make a living, but evade process at the same time.

**THE COURT:** But his parents are here; his -- all his siblings, but one, are here; and his children are here?

**MR. WILLIAMS:** Your Honor, I have not --

**THE COURT:** I'm looking at the pretrial services report. Have y'all had a chance to read it, Mr. Daniel? I should have asked if you had a chance to -- it's correct?

**MR. DANIEL:** Yes. And Your Honor, he did know about the investigation because it got closed. After we interviewed, it got closed.

**THE COURT:** He got -- I'm sorry. He got --

**MR. DANIEL:** After -- Mr. Williams referred to the fact that he had sat down and been interviewed. I was there for the interview. After the interview is when we were told the investigation was closed. But to the government's credit, they decided that they had some new information later on. And a month or two later, I was contacted by the agent and the Assistant U.S. Attorney and told it was reopened. That was done six months ago, I guess, or five months ago.

And nothing's changed with Mr. Golestan and my relation -- any time he goes out of town, he would generally tell me. I've got a cell phone number to get him. He's known

1  about this case or charges and how serious they were.
2          **THE COURT:**    All right. Well, as I mentioned, there
3  are some promises you have to make to me in order to be
4  released on a bond like this. The first requirement of any bond
5  is that you show up for court when you are required. To do
6  that, you'd have to stay in touch with your lawyer because he's
7  the one who gets the -- he's the one who gets the notices of
8  court, not you.
9          You are not to commit any federal, state or local law
10 -- violation of law. You are not to change your address without
11 telling the probation office first. Because you're going to be
12 supervised by the U.S. Probation Office and will submit to
13 supervision by them, report to them, and follow all of their
14 instructions. You are to continue, or actively seek,
15 employment.
16         I am reluct -- I think you have shown that --
17 Mr. Daniel has shown that you have known about this
18 investigation, you've known that the investigation was reopened
19 and that indictment was possible, and that you have shown up as
20 you were required to for this hearing, and you've come -- you
21 have traveled internationally and been -- come back, even
22 though you knew this indictment was possible.
23         So I am going to let you keep your passport and
24 travel, but with these restrictions: You are going to have to
25 inform your probation -- your supervising probation officer of

1  every trip. You are to have a phone that is internationally
2  capable of calling back to the probation office. And you are to
3  follow their instructions. If they ask you to call every day,
4  if they ask you to call twice a day while you are out of the
5  country, you are to do so. And you are submit your itinerary
6  and your contact information, what hotels you're staying in,
7  etc., for each of those trips and follow any and all
8  instructions of the probation office on that.
9          So you don't have free -- free reign to go any time
10 you want. You're going to have to check with your probation
11 officer and with your lawyer because you're not to miss any
12 court because you're work -- you're working internationally.
13 And I would encourage you also to handle as much of that
14 business from here by video conference or by phone as possible,
15 and restrict those number of trips, because I'm going to ask
16 probation if you're traveling all the time. And I may have to
17 put -- change that bond condition, if you don't follow their
18 instructions or if you're traveling too much out of the
19 country.
20         I also want to know which countries you're traveling
21 to, because I do not think you should be traveling to a country
22 that does not have an extradition treaty with the United
23 States. So you will need to -- that's why you've got to plan in
24 advance. All right.
25         You are to avoid all contact, directly or indirectly,

1   with any person who is or may be a victim or witness in the
2   investigation or prosecution of this case.
3          Are there any people in particular, Mr. Williams,
4   that I need to caution Mr. Golestan about?
5          **MR. WILLIAMS:**  I don't think so, Your Honor. To the
6   extent that we have interviewed individuals he's been in
7   contact with, I think they know.
8          **THE COURT:**  All right. I just wanted to make sure
9   there was no -- and I did not ask you earlier: Have the victims
10  in this case been notified of the indictment and the hearings?
11         **MR. WILLIAMS:**   Yes, Your Honor.
12         **THE COURT:**   All right. So you are -- you know, you
13  should be doing no investigation of this case. Your lawyer
14  should be doing the investigation of the case. And you should
15  not be talking to any witnesses, any person who could be a
16  witness about it. You shouldn't be talking about the case to
17  other people. You follow your lawyer's lead on that. All right.
18  Because it's not only a bond condition that you not do that,
19  but any of your contact could be construed as obstruction of
20  justice or obstructing the investigation.
21         You are to get any medical or psychiatric treatment
22  as directed by probation and you shall contribute to the cost
23  of such treatment not to exceed an amount determined reasonable
24  by the Probation Office's Sliding Scale for Services, that's if
25  directed by probation.

1     You are not to possess any gun, firearm, destructive
2  device or other weapon. And I have been informed that you might
3  have a gun collection. All of those have to be removed from the
4  home. They have to be secured in a place that you do not have
5  access to or a key to -- you know, any kind of security. You
6  can't be a part of any security for that. The probation office
7  will be following up on that. If you haven't already done that,
8  Mr. Daniel will let you work with him and probation officer on
9  getting that accomplished.
10     You are not to use alcohol excessively. You are not
11 to use, or unlawfully possess, a narcotic drug or other
12 controlled substance, unless it's prescribed to you by a
13 licensed doctor or medical practitioner. That means not only,
14 of course, no illegal drugs, but it means no legal medications,
15 unless it's your own prescription. You are to submit to any
16 testing for -- drug testing as required by the probation
17 office, random drug testing.
18     You are to participate in a program of inpatient or
19 outpatient substance abuse therapy and counseling, if directed
20 by the probation office. You will contribute to the cost of
21 that treatment, as well.
22     You are to report -- this is a -- this is something
23 different that you, not having any contact with the criminal
24 court system before -- you are to report as soon as possible,
25 to probation, any contact with law enforcement. That means, not

1  just, of course, if you got arrested for something, but it
2  means even if you were questioned by the police or whether you
3  had a traffic stop and got a traffic ticket or not got a
4  ticket, you need to let probation know. Because all of that
5  information gets put into a computer system. It is a
6  requirement of your bond that you tell them yourself, not that
7  they'd have to wait around for some computer notification that
8  you've had contact with law enforcement.
9          You are to remain under the supervision of the
10 probation office for the duration of the bond and follow any
11 and all instructions given to you by that probation officer and
12 stay in touch with your attorney. And as I -- if you have any
13 problems with anything -- with the probation office, that's
14 what your lawyer is for. All right. You are to talk to him. But
15 it is your obligation to follow all of their instructions. All
16 right.
17         There's going to be some paperwork to fill out and
18 you have to be processed by the marshal service. But before we
19 do that, let me advise you of the penalties and sanctions: If
20 you violate a condition of this bond, an arrest warrant may be
21 issued for you and you could be detained pending your trial.
22 Further, you could be prosecuted for contempt of court, which
23 could result in prison time or a fine. If you commit a crime
24 while on this bond, you could be sentenced to an additional
25 term of prison to be served consecutive to, or on top of, any

1  other sentence you might receive. There are further additional
2  penalties for: intimidating or attempting to intimidate any
3  witness, juror, or officer of the court; obstructing a criminal
4  investigation; or tampering with or retaliating against any
5  witness, victim, or informant.
6           After you are released, if you fail to appear for
7  court at any time or if you fail to report to begin the service
8  of any sentence that might be imposed, you could be prosecuted
9  for failure to appear and receive a consecutive sentence for
10 that offense. And as I mentioned before, that 500,000-unsecured
11 bond, the government could come after you for a judgment in
12 that amount. Do you understand, Mr. Golestan?
13          **THE DEFENDANT:**   Yes, Your Honor.
14          **THE COURT:**   All right. Do you have any questions for
15 me at this point?
16          **THE DEFENDANT:**   No. Thanks.
17          **THE COURT:**   There are some -- there's some paperwork
18 for you to fill out. Now, I'm -- I'm putting -- I'm putting my
19 faith in you, of course, that you're not going to try to evade
20 this prosecution and you're not going to stay in a foreign
21 country. All right. So I'm putting my trust in you for that.
22          **THE DEFENDANT:**   Yes, Your Honor. Thank you.
23          **THE COURT:**   Hold on one sec. Y'all can be seated.
24 (Pause.)
25          Your travel, international travel, should only be for

1  work, as approved by the probation office. (Pause.)
2           That looks good. Anything else?
3           Oh. He will not be allowed to travel to any country
4  -- let's see, he can travel -- he can only travel to countries
5  with extradition treaty with the United States. You want me to
6  write it? All right. (Pause.)
7           And Mr. Daniel, I get the -- I'm putting it on you to
8  determine whether or not -- to prove to probation that there's
9  an extradition treaty with any country he wants to go to visit.
10 All right.
11          **MR. DANIEL:**   Yes, I do -- yes, ma'am, Your Honor.
12          **THE COURT:**   And I made sure it was only for work
13 purposes. Because if you abuse this privilege, Mr. Golestan,
14 then the probation office will come back to me and we can --
15 I'll be changing those bond conditions. I know you will not
16 abuse this privilege; correct?
17          **THE DEFENDANT:**   Yes, Your Honor.
18          **THE COURT:**   All right. Thank you. Y'all will need to
19 fill out that top paperwork.
20          **MR. DANIEL:**   Thank you, Judge.
21          **THE COURT:**   And then you can bring it up to the
22 clerk while we're doing something else even, and she'll give
23 you the nod when it's time to leave. Just don't leave until she
24 gives you the nod that all the paperwork's good.
25          **MR. DANIEL:**   Yes, Your Honor. Thank you.

1    **THE COURT:** Thank you.

2    (Proceeding concludes at 1:55 p.m.)

3

4                                *********

5                          **C E R T I F I C A T E**

6    I, Teresa B. Johnson, Official Reporter for the U.S.

7    District Court, District of South Carolina, hereby certify that

8    the foregoing is a true and correct transcript of the

9    electronically-recorded above proceedings, to the best of my

10   ability.

11

12   _____          June 7, 2019

13   Teresa B. Johnson, CVR-M-CM, RVR, RVR-M              Date