IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVSON

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>   )<br>  vs. )<br>   )<br> AMIR GOLESTAN, )<br> MICFO, LLC )<br>   )<br>      Defendants. )<br>_____) | Criminal No.: 2:19-cr-00441 |

## DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

The Defendants, Amir Golestan and Micfo, LLC, by and through their undersigned attorneys, E. Bart Daniel and Matthew W. Orville, hereby respectfully move to dismiss the Indictment for failure to state an offense, pursuant to Fed. R. Crim. P. 12(b)(3)(B)(v). In support of this Motion, Defendants state the following:

### STANDARD

Rule 12(b)(3) of the Federal Rules of Criminal Procedure permits a defendant to file a pretrial motion to dismiss an indictment that is defective by virtue of failing to state an offense. *United States v. Vanderhorst*, No. 4:17-CR-00865-RBH-1, 2018 WL 2462873, at *1 (D.S.C. May 31, 2018); Fed. R.Crim. Proc. 12(b)(3)(b)(v). "To survive a motion to dismiss sought pursuant to Rule 12, an indictment must allege facts that, if proven true, would sustain a violation of the offense charged." *United States v. Phillips*, No. 3:18-CR-00624-JMC, 2019 WL 1330858, at *3 (D.S.C. Mar. 25, 2019) (internal citations omitted). Such a motion to dismiss "is ordinarily limited to the allegations contained within the indictment." *Id.* (citation omitted). An indictment must state the necessary elements of the charged offense along with a statement of facts supporting the charge and informing the defendant of the specific conduct alleged to

constitute the offense. *United States v. Perry*, 757 F.3d 166, 171 (4th Cir. 2014). Dismissal of an indictment is discretionary with the trial court. *See United States v. Phillips*, at *3.

## ARGUMENT

Even taking all facts pled by the United States of America ("U.S.") in the Indictment (ECF No. 2) as true, the Indictment fails to state an offense as Defendants neither devised or intended to devise any "scheme or artifice to defraud", nor did Defendants obtain money or property by means of false or fraudulent pretenses as required by 18 U.S.C. § 1343.

18 U.S.C. § 1343 states the following:

> Whoever, having devised or intending to devise any *scheme or artifice to defraud*, or for obtaining *money or property* by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both. (emphasis added)

Thus, the statute requires the U.S. to show either, 1) a "scheme or artifice to defraud" by the Defendants, or 2) that the Defendants obtained "money or property by means of false or fraudulent pretenses, representations, or promises." Even taking all facts from the Indictment as true, the U.S. can show neither.

**A. Defendants did not obtain "money or property" by means of false or fraudulent pretenses, representations, or promises, as Defendants obtained no property rights to the IP addresses obtained from ARIN.**

Absent a showing of a "scheme or artifice to defraud" (to be addressed below), the U.S. must prove the Defendants obtained "property rights" fraudulently. *See McNally v. United*

*States*, 483 U.S. 350, 359–60 (1987) (holding that the mail fraud statute is "limited in scope to the protection of property rights"); *United States v. Baroni*, 909 F.3d 550, 564 (3d Cir. 2018) ( "[T]he federal fraud statutes require the defendants to scheme to defraud a victim of 'property rights.'"). Such property rights may be tangible or intangible and courts typically look to whether the law traditionally has recognized and enforced a particular interest as a property right to determine whether such interest is property for purposes of the mail and wire fraud statutes. *Baroni*, 909 F.3d at 564–65 (citing *United States v. Henry*, 29 F.3d 112, 115 (3d Cir. 1994); *United States v. Evans*, 844 F.2d 36, 41 (2d Cir. 1988)).

The Indictment alleges Defendants used aliases and false information, and created and utilized Channel Partners "to apply to ARIN for IP addresses" and "obtained IP addresses as a result[.]" (Indictment ¶¶ 3, 5). While this implies the Defendants, and/or the Channel Partners, obtained some "property right" to these IP addresses, Defendants obtained neither a tangible nor an intangible property right to such IP addresses.

This fact is conspicuously spelled out in all of ARIN's Registry Services Agreements ("RSA(s)"). The RSA between Micfo and ARIN is attached hereto as <u>Exhibit 1</u>.[1] The RSA uses the term "Services", throughout the agreement to describe ARIN's responsibilities to Micfo under the RSA, for which Micfo paid ARIN. Specifically, Section 7 of the RSA is entitled "No Property Rights" and states: "Holder [i.e., Micfo] acknowledges and agrees that: (a) the Included Number Resources [IPv4 addresses] are not property (real, personal, or intellectual) of Holder; (b) Holder does not and will not have or acquire any property rights in or to Included

---

[1] To the extent the Court need go beyond the face of the indictment and review this document to rule on Defendants' Motion, district courts may make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact. *United States v. Jones*, 542 F.2d 661, 664-66 (6th Cir. 1976). Further, although the RSA is not attached to the Indictment, it is referenced (Indictment ¶ 1(d)) and it is the nucleus of the allegedly fraudulent transaction between ARIN and Defendants, making it logical for the Court to review the RSA to assist in its determination of this Motion.

Number Resources by virtue of this Agreement."[2] Section 14(g) of the RSA goes further, stating that the services agreement "is made solely for the benefit of the parties and does not, and will not, be construed to grant any rights or remedies to any other person or entity other than as expressly provided for in this Agreement." A cursory review of the RSA makes it clear that ARIN did not convey, nor did Defendants obtain, any property right, tangible or intangible, as a result of Defendants' actions described in the Indictment.

Further, IP addresses themselves are services, not property. An IP address is a service provided by Regional Internet Registries (RIR), of which the American Registry for Internet Numbers (ARIN) is one of five. *Weinstein v. Islamic Republic of Iran*, 831 F.3d 470, 477 (D.C. Cir. 2016). As aptly explained by the Court of Appeals for the District of Columbia,

> "The IP address is the appropriate starting point. Every device connected to the Internet and every web page on the Internet is identified by an IP address. The IP address appears as a string of numbers separated by periods, for example, '100.200.123.234.' It identifies the location, 'i.e., a particular computer-to-network connection" of an end-user's computer and also 'serves as the routing address for . . . requests to view a web page.' The IP address is critical to the Internet's functioning in the same way a telephone number is essential to the functioning of the telecommunications system. One may dial a set of numbers to connect to other individuals through the telecommunications system and the same is true vis-à-vis an IP address and the Internet."

*Weinstein v. Islamic Republic of Iran*, 831 F.3d 470, 473 (D.C. Cir. 2016). IP address resources are allocated or leased by RIRs to companies pursuant to a registry services agreement. In the *Weinstein* case, the plaintiff tried to attach IP addresses and the country-code top-level domains (ccTLDs) for Iran, Syria and North Korea. ICANN[3] objected to the writs of attachment arguing IP addresses are not "property" that could be attached. *Weinstein*, 831 F.3d at 478. The trial

---

[2] Presumably ARIN would prefer that IP addresses not be "property" because if they were, ARIN, a non-profit that "administers IP addresses," would have a multi-million dollar property interest in the majority of IP address in North America.

[3] In 1998 the United States government transferred much of its oversight role to the Internet Corporation for Assigned Names and Numbers (ICANN), a California non-profit corporation. ICANN's mission is to "protect the stability, integrity, interoperability and utility of the DNS on behalf of the global Internet community." *Weinstein*, 831 F.3d at 476. One of ICANN's functions is to oversee the allocation of IP addresses. *Id*.

court and Court of Appeals agreed and refused to attach such contracts for services consisting of IP addresses held by Iran, Syria and North Korea.

Because IP addresses are not property and because the RSA between ARIN and Defendants clearly establishes that the IP addresses at issue never became property, "real, personal, or intellectual," of Defendants, the facts pled in the Indictment fail to establish that Defendants fraudulently obtain "property" as required for an offense under § 1343.

To the extent the U.S. argues Defendants fraudulently obtained "money" as a result of their actions, the U.S. failed to specifically plead this in the Indictment. *See* Indictment ¶ 2 (Defendants "knowingly did devise and intend to devise a scheme and artifice to defraud and to *obtain property* by means of false and fraudulent pretenses, representations, and promises . . ." (emphasis added)). This alone should be sufficient to show the Indictment fails to state an offense related to Defendants fraudulently obtaining money.

However, in addition, Defendants never obtained any money from ARIN, the entity they allegedly defrauded. Instead Defendants paid money to ARIN for ARIN's services related to the IP addresses. Though the Indictment mentions Defendants' "sale" of the IP addresses (Indictment ¶ 8) on the secondary market, Defendants did not, and could not, sell the IP addresses because they had no property interest in the IP addresses. Rather, Defendants transferred the IP addresses as permitted under the RSA, which amounted to the transfer of the services ARIN was providing Defendants to the transferee/purchaser.[4] The U.S. has alleged no fraudulent activity related to these transactions by the Defendants and the only reason a secondary market existed for the services related to these IP addresses was because of ARIN's failure to anticipate the exhaustion of the IPv4 addresses for which it provides services. Just as

---

[4] Transfer agreements relating to IP addresses are also agreements for services, rather than property rights to the IP addresses. Such agreements require the approval of ARIN and involve the agreement by the transferor to apply to ARIN for the transfer and to provide ARIN all necessary information for the implementation of the transfer.

ARIN was not deprived of any money or property by Defendants, neither was the purchaser/transferee, as the purchaser/transferee received the services from ARIN related to the IP addresses as it would have been required to purchase from any other transferor on the secondary market.[5]

Based on the information above, the U.S. has failed to plead facts showing Defendants obtained money or property as a result of their allegedly fraudulent actions.

### B. Defendants actions did not amount to a "scheme or artifice to defraud" because they did not deprive ARIN of anything of value.

"To convict a person of mail fraud or wire fraud, the government must show that the defendant (1) devised or intended to devise a scheme to defraud and (2) used the mail or wire communications in furtherance of the scheme." *United States v. Wynn*, 684 F.3d 473, 477 (4th Cir. 2012). "[T]he element 'to defraud' has 'the common understanding of wronging one *in his property rights* by dishonest methods or schemes and usually signify[ing] the deprivation of something of value by trick, deceit, chicane, or overreaching.'" *Id.* at 477-78 (emphasis added) (quoting *Carpenter v. United States,* 484 U.S. 19, 27 (1987). "The mail fraud and wire fraud statutes have as an element the specific intent to *deprive one of something of value* through a misrepresentation or other similar dishonest method, which indeed would cause him harm." *Id.* at 478 (emphasis added). "[T]o convict a person of defrauding another, more must be shown than simply an intent to lie to the victim or to make a false statement to him." *Id.* (citing *United States v. D'Amato,* 39 F.3d 1249, 1257 (2d Cir.1994) ("[M]isrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution")). Further, "a defendant must specifically intend to lie or cheat or misrepresent *with the design of depriving the victim of*

---

[5] It is worth noting that, because ARIN was paid in full for its services, the transferee of the IP addresses paid the reasonable market value for the transfer of the IP addresses, and the remaining IP addresses were "returned" to ARIN, there was no party that was harmed by the Defendants' conduct described in the Indictment.

*something of value*. This specific intent to defraud is the only mens rea requirement for mail fraud and wire fraud." *Id.*

IP addresses have no intrinsic value because they cannot be owned and are not property. As discussed above and outlined in the RSA, the IP addresses at issue never became the property of Defendants, nor was ARIN deprived of any property rights to such IP addresses. At all times, ARIN retained the ability to recall all of the IP addresses at issue. Rather than depriving ARIN, the alleged fraud victim, of anything of value, as required to show a "scheme or artifice *to defraud*," Defendants paid ARIN for its services related to the IP addresses commensurate to the amount paid by any other party that applied for and was approved to receive such services. ARIN lost nothing of value and, instead, obtained the $266,500.00[6] paid by Defendants for ARIN's services. Accordingly, even taking all facts from the Indictment as true, the U.S. has not shown that Defendants devised or intended to devise a "scheme or artifice to defraud" sufficient for a conviction under 18 U.S.C. § 1343.

## CONCLUSION

As discussed above, the indictment fails to plead facts, even when taken as entirely true, sufficient to show that the Defendants either 1) devised or intended to devise a "scheme or artifice to defraud," or 2) have obtained "money or property" by means of false or fraudulent pretenses. Accordingly the Indictment fails, as a matter of law, to state an offense under 18 U.S.C. § 1343, and the Indictment should be dismissed pursuant to Fed. R. Crim. P. 12(b)(3)(B)(v).

[SIGNATURE PAGE FOLLOWS]

---

[6] This amount represents the amount paid by Micfo and the Channel Partners to ARIN for membership fees from August 2011 to August 2018.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: *s/ E. Bart Daniel*
E. Bart Daniel
Federal Bar No. 403
E-Mail: bart.daniel@nelsonmullins.com
John C. McElwaine
Federal Bar No. 6710
E-Mail: john.mcelwaine@nelsonmullins.com
Matthew W. Orville
Federal Bar No. 12533
E-Mail: matt.orville@nelsonmullins.com
151 Meeting Street / Sixth Floor
Post Office Box 1806 (29402-1806)
Charleston, SC  29401-2239
(843) 853-5200

*Attorneys for Amir Golestan and Micfo, LLC*

September 25, 2019

Charleston, South Carolina

IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal No.: 2:19-cr-00441 |
| vs. ) | |
| ) | |
| AMIR GOLESTAN, ) | |
| MICFO, LLC ) | |
| ) | |
| Defendants. ) | |
| ) | |

I hereby certify that on September 25, 2019, a copy of the foregoing Motion to Dismiss has been filed with the Clerk of Court via the CM/ECF system which will send notification of this filing to all counsel of record.

By: _s/ E. Bart Daniel_
E. Bart Daniel
Federal Bar No. 403
E-Mail: bart.daniel@nelsonmullins.com
151 Meeting Street / Sixth Floor
Post Office Box 1806 (29402-1806)
Charleston, SC  29401-2239
(843) 853-5200

9