IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO.: 2:19-DR-00441-DCN |
| | ) | |
| v. | ) | **GOVERNMENT'S MEMORANDUM** |
| | ) | **IN OPPOSITION TO DEFENDANTS'** |
| AMIR GOLESTAN | ) | **MOTION TO DISMISS** |
| MICFO, LLC | ) | |

In order to obtain the rights to IP addresses from the American Registry for Internet Numbers ("ARIN") that they could not legally obtain, Defendants Amir Golestan ("Golestan") and Micfo, LLC ("Micfo") created fictitious companies and applied to ARIN for IP addresses through these fictitious companies. To execute their scheme to defraud, Defendants created fake websites for the fictitious companies and fabricated the names of individual officers and employees. Purporting to be these made-up individuals acting on behalf of these non-existent companies, Defendants sent e-mails to ARIN and signed ARIN-required declarations and applications in order to obtain IP addresses from ARIN. After fraudulently obtaining the rights to the IP addresses, Defendants then sold many of those addresses to third parties, making millions of dollars in profit from their scheme.

Against these facts, which are set forth in detail in the Indictment (ECF No. 2), Defendants argue that the Indictment does not sufficiently state an offense and should be dismissed pursuant to Rule 12(b)(3), Fed. R. Crim. P. This argument is flawed as the Indictment sufficiently states an offense against both Golestan and Micfo for wire fraud under 18 U.S.C. § 1343. As such, the Court should deny the Defendants' Motion to Dismiss the Indictment.

**FACTUAL BACKGROUND**

    1.    <u>The American Registry for Internet Numbers</u>

ARIN is a non-profit organization that administers IP addresses. ARIN assigns IP addresses to internet service providers and other end-user organizations that utilize IP addresses in their businesses. As the gatekeeper of IP addresses, ARIN is responsible for maintaining records, determining who is responsible for a given IP address, and ensuring that an IP address is not used by multiple networks.

An IP address consists of a series of numbers separated by periods. IP addresses have gone through several versions, most recently versions four (IPv4) and six (IPv6). IPv6 was created after IPv4 addresses were depleted at a rate not initially anticipated during the design of the IP address system. From a technology standpoint, IPv6 does not create an immediate solution to the problem created by the exhaustion of IPv4 addresses. As a result, there is a demand for IPv4 addresses. IPv4 addresses are transferrable between entities (with ARIN approval). Due to the demand and the transferability, a secondary market was created for the transfer of IPv4 address blocks.

ARIN has specific policies and procedures that must be followed before an IP address can be assigned or transferred. An organization requesting IP addresses from ARIN must submit a formal request to ARIN; must document the organization's need for the requested resources; and must enter into a Registration Services Agreement ("RSA") with ARIN. In early 2011, following the exhaustion of IPv4 addresses, ARIN still had its own pool of IPv4 addresses available to issue. Given the demand, ARIN often required justification and customer identification for additional IPv4 address blocks in an effort to verify that the IPv4 request was valid.

2.      Golestan and Micfo's Scheme to Defraud

Beginning around February of 2014, Golestan and Micfo created companies referred to collectively as the Channel Partners. Golestan and Micfo created the Channel Partners in order to apply to ARIN for IP addresses. Golestan and Micfo created fake websites for the Channel Partners and created fake identities for the officers and employees of the Channel Partners. When the Channel Partners applied to ARIN for IP addresses, the "businesses" would provide information to ARIN, including the identity of the "officers" and information regarding registration with the Secretary of State. The "officers" of the Channel Partners would also execute affidavits representing facts about the "businesses." In reality, the Channel Partners were fictitious companies, and the actions and communications of the officers and employees of the Channel Partners were from Golestan. Through this scheme to defraud, Golestan and Micfo obtained the rights to approximately 757,760 IPv4 addresses from ARIN using false and fraudulent pretenses, representations, and promises.

Golestan then sold the rights to these fraudulently obtained IPv4 addresses to third parties for millions of dollars in profit. Golestan attempted to sell the rights to additional IPv4 addresses, but ARIN uncovered Golestan's fraud and blocked the additional sales.

**STANDARD**

"Rule 12(b)(3) of the Federal Rules of Criminal Procedure permits a defendant to file a pretrial motion to dismiss an indictment that is defective by virtue of failing to state an offense." U.S. v. Vanderhorst, No. 4:17-cr-00865-RBH-1, 2018 WL 2462873, at * 1 (D.S.C. May 31, 2018) (citing Fed. R. Crim. P. 12(b)(3)(B)(v)). "Such a motion to dismiss tests whether the indictment sufficiently charges the offense set forth against the defendant." Id. (internal citations omitted). "An indictment must generally state the necessary elements of the charged offense, accompanied

3

by a statement of facts supporting the charge and informing the defendant of the specific conduct alleged to constitute the offense." Id. (internal citations omitted).

"To overcome [a Rule 12(b)(3) motion], the indictment must include every essential element of the offense." U.S. v. Burks, 746 Fed. Appx. 191, 198 (4th Cir. 2018). "In general, it is sufficient that an indictment set forth the offense in the words of the statute itself." Id. (internal citations omitted). "Furthermore, if the indictment meets this standard, it is 'valid on its face' and the court may not 'review the sufficiency of evidence supporting' the indictment because a valid 'indictment returned by a legally constituted and unbiased grand jury' is 'enough to call for trial of the charges on the merits.'" Id. (quoting U.S. v. Wills, 346 F.3d 476, 488-89 (4th Cir. 2003)).

Applying this standard to the Indictment in this case, the Court should deny Defendants' Motion to Dismiss.

## ARGUMENT

The Indictment charges Defendants with wire fraud under 18 U.S.C. § 1343. "The wire fraud statute provides for the punishment of whoever 'transmits or causes to be transmitted' a wire communication to execute a scheme or artifice to defraud." U.S. v. Jefferson, 674 F.3d 332, 366 (4th Cir. 2012) (quoting 18 U.S.C. § 1343). "The essential elements of a wire fraud offense are '(1) the existence of a scheme to defraud and (2) the use of a wire communication in furtherance of the scheme.'" Id. (quoting U.S. v. Curry, 461 F.3d 452, 457 (4th Cir. 2006)). Defendants assert several arguments in support of their Motion to Dismiss the Indictment. The Government will address these arguments in turn.

    1.    <u>Defendants obtained property through their fraudulent scheme.</u>

Defendants first note that the wire fraud statute is "limited in scope to the protection of property rights." The Government concedes that courts have recognized that the wire fraud statute

4

is limited to protecting property rights. See, e.g., U.S. v. Burn, 26 Fed. Appx. 139, 142 (4th Cir. 2001) (citing U.S. v. Adler, 186 F.3d 574, 576 (4th Cir. 1999) (quoting McNally v. U.S., 483 U.S. 350, 357 (1987))). Defendants then correctly note that property, as that term is contemplated by cases interpreting the wire and mail fraud statutes, can be "tangible or intangible" property. See, e.g., Carpenter v. U.S., 484 U.S. 19, 25 (1987) (holding the "intangible nature [of confidential business information] does not make it any less 'property' protected by the mail and wire fraud statutes") (U.S. v. Baroni, 909 F.3d 550, 564 (3rd Cir. 2018) (holding "property rights [under wire and mail fraud statutes] need not be tangible"). Defendants then argue that ARIN's control over and right to assign IP addresses is not a property right and, as a result, Defendants' fraudulent scheme to obtain IP addresses from ARIN cannot be punished by the wire fraud statute. Defendants' argument in this respect is not supported by the facts or the law.

In McNally, the Supreme Court held that the mail fraud statute "is limited in scope to the protection of property rights." 483 U.S. 350, 360 (1987). That same year, the Court considered the reach of McNally when it decided Carpenter. In Carpenter, a reporter for a financial newspaper was convicted of participating in an insider-trading scheme based upon information that he misappropriated from the newspaper. 484 U.S. at 22-24. On appeal, the reporter argued, in part, that he did not obtain any "money or property" from the newspaper and thus could not have been guilty of wire fraud. Id. at 25. Specifically, the journalist argued that the newspaper's "interest in prepublication confidentiality . . . is no more than an intangible consideration outside the reach" of the mail fraud statute. Id. The Court disagreed, noting that "the object of the scheme was to take the [newspaper's] confidential business information . . . and its intangible nature does not make it any less 'property' protected by the mail and wire fraud statutes."

5

Citing McNally, the Fourth Circuit has recognized the Supreme Court admonishment that the mail and wire fraud statutes "should be interpreted broadly insofar as property rights are concerned." U.S. v. Adler, 186 F.3d 574, 576 (4th Cir. 1999). In Adler, the court noted that "the victim of fraud need not suffer financial loss; rather, he need only be deprived of some right over that property, such as the right to exclusive use." Id. The court has "applied the common sense notion that property is anything in which one has a right that could be assigned, traded, bought, and otherwise disposed of." Id. (citing U.S. v. Mancuso, 42 F.3d 836, 845 (4th Cir. 1994)).

Applying the reasoning of McNally, Carpenter, and Adler, it is clear that the right to use and assign an IP address satisfies the definition of property for purposes of the wire fraud statute. ARIN delegates and assigns IP addresses to its customers, allowing them to utilize the IP addresses and, if approved by ARIN, transfer them. ARIN, as the Regional Internet Registry, has the exclusive right and ability to control the distribution of IP addresses. Golestan and Micfo defrauded ARIN into assigning IPv4 addresses to non-existent companies that were actually controlled by Golestan. In so doing, Golestan and Micfo divested ARIN of its exclusive right and ability to assign IPv4 addresses at its discretion and in accordance with its policies. Golestan and Micfo obtained property[1] by means of their fraudulent scheme.

---

[1] To support their position that the IP addresses are not property, Defendants also turn to the RSAs entered into between ARIN and its customers. However, in deciding Defendants' 12(b)(3) motion, the Court should not consider the RSAs. "In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." U.S. v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006) (emphasis supplied by court). A Rule 12(b)(3) "challenge to the sufficiency of the indictment should be decided based on the facts alleged within the four corners of the indictment, not the evidence outside of it." U.S. v. Vitillo, 490 F.3d 314, 321 (3rd Cir. 2007). Even if the Court does consider the RSAs, the RSAs do not support Defendants' conclusion that, by their scheme, Defendants did not fraudulently obtain property. The RSAs provide that ARIN customers are granted "the following specified rights: (1) The exclusive right to be the registrant of the included Number Resources within the ARIN database; (2) The right to use the included Number Resources

### 2. Defendants obtained money through their fraudulent scheme.

Defendants next argue the Government failed to allege that Defendants obtained "money" as a result of their fraud and that, in any event, Defendants never obtained any money from ARIN, the entity they allegedly defrauded. First, the Indictment plainly alleges Defendants obtained money as a result of their scheme. The Indictment charges that Golestan "sold, and attempted to sell, IP addresses he had fraudulently obtained the rights to" for nearly two million dollars. (ECF No. 2 ¶ 8.) The Indictment further seeks the forfeiture by Defendants of "[a] sum of money equal to all proceeds the Defendants obtained directly or indirectly as a result of the offenses charged in this Indictment." (ECF No. 2 p. 9.) The Indictment, on its face, alleges Defendants obtained money as a result of their fraudulent scheme.

Defendants then argue the Indictment is insufficient because Defendants did not receive money *from ARIN*, the entity Defendants are alleged to have defrauded. In making this argument, Defendants appear to advance a convergence theory of wire fraud which would require the Government to prove that the party defrauded and the party injured are the same. The Fourth Circuit has never adopted such a theory. See, e.g., U.S. v. Wynn, 684 F.3d 473 (4th Cir. 2012) ("Our court has never addressed the convergence argument . . ."). The Second Circuit, the most recent appellate court to take up the issue, squarely rejected it as a required element of wire fraud. See U.S. v. Greenberg, 835 F.3d 295, 305 (2nd Cir. 2016) ("We have never read the wire and mail fraud statutes as limited to schemes in which the party whose money or property is the object of the scheme is the same party whom a fraudster seeks to deceive.").

---

within the ARIN database; and (3) The right to transfer the registration of the included Number Resources pursuant to the Policies." ¶ 2(b).

As charged in the Indictment, Defendants made millions of dollars as a result of their fraudulent scheme to acquire the rights to IP addresses from ARIN under false pretenses and to sell those rights to third parties for a substantial profit. Having utilized wire communications to execute the scheme to defraud, Defendants committed wire fraud, and the Indictment sufficiently states that offense against them.

### 3. Defendants intended to deprive ARIN of something of value.

Similar to their first argument, addressed *supra*, Defendants conclude by arguing the Indictment should be dismissed because Defendants did not intend to deprive ARIN of "something of value" and, therefore, cannot be found to have entered into a scheme or artifice to defraud. First, as stated above, ARIN's exclusive right to direct and oversee the distribution and use of IP addresses is itself something of value that Defendants, through their fraud, took from ARIN. Second, to support this argument, Defendants state that "IP addresses have no intrinsic value because they cannot be owned and are not property." Clearly, however, the right to use a particular IP address does have value. Otherwise, a market would not exist for such sales, and Golestan would not have made millions of dollars from fraudulently transferring IP addresses to third parties. Through this elaborate scheme to defraud, Defendants obtained from ARIN the right to use more than 750,000 IPv4 addresses. The value of the rights to those IP addresses was somewhere between $9,850,000 and $14,000,000, and Defendants earned more than $1.5 million from selling these IPv4 addresses. Defendants' argument that they did not intend to deprive ARIN of something of value strains reason.

## CONCLUSION

The Indictment sufficiently charges Defendants with the offense of wire fraud. Having included the essential elements of the offense and the factual allegations supporting the charge, the

Indictment is valid on its face and calls for a trial of the charges on the merits. The Court should deny Defendants' Motion to Dismiss.

                                            Respectfully submitted,

                                            SHERRI A. LYDON
                                            UNITED STATES ATTORNEY

                                By:    *s/ William H. Jordan*
                                            William H. Jordan, #10174
                                            Assistant U.S. Attorney
                                            1441 Main Street, Suite 500
                                            Columbia, SC  29201
                                            (803) 929-3066

October 3, 2019