IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO.: 2:19-cr-00441-RMG-1,2 |
| ) | |
| vs. ) | |
| ) | |
| AMIR GOLESTAN, ) | |
| MICFO, LLC ) | |

**MOTION FOR PRELIMINARY ORDER OF FORFEITURE
AS TO AMIR GOLESTAN AND MICFO, LLC**

Pursuant to Fed. R. Crim. P. 32.2(b), the United States of America, by and through its undersigned Assistant United States Attorney, Carrie Fisher Sherard, moves this Court for the entry of a Preliminary Order of Forfeiture as to Amir Golestan and Micfo, LLC, based on the Defendants conviction of wire fraud, in violation of Title 18, United States Code, Sections 1343.

In support of this Motion, the United States sets forth the following:

1. On May 7, 2019, a federal grand jury sitting in the District of South Carolina returned a multi-count Indictment, charging Amir Golestan and Micfo, LLC ("Defendants"), on 20 counts of wire fraud under 18 U.S.C. § 1343.

2. The Indictment included a forfeiture allegation pursuant to 21 U.S.C. § 853(b), which provided notice that the United States would seek forfeiture, upon conviction of Defendants of the offenses alleged in the Indictment of Defendants' property, real or personal, constituting, derived from or traceable to proceeds the Defendants obtained directly or indirectly as a result of such offenses.

3. Under 21 U.S.C. § 853(b), "property subject to criminal forfeiture" includes "tangible and intangible personal property, including *rights,* privileges, interests, claims, and securities." 21

1

U.S.C. § 853(b)(1)-(2) (emphasis added).  Accordingly, the Indictment provided notice that the United States would seek to forfeit the rights to Internet Protocol ("IP") addresses previously obtained by Defendants from the American Registry for Internet Numbers, Ltd. ("ARIN").

4.  The Forfeiture Allegations of the Indictment also provided notice that, in the event that any property subject to forfeiture, as a result of any act or omission of the Defendant, (a) cannot be located upon the exercise of due diligence, (b) has been transferred or sold to, or deposited with, a third party, (c) has been placed beyond the jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been commingled with other property which cannot be divided without difficulty, it was the intention of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1), to seek forfeiture of any other property of the Defendant, up to the value of such property identified in the Indictment.

5.  On November 16, 2021, the Defendants pled guilty to all Counts of the Indictment.

6.  Based on the Defendant's guilty plea, the United States is entitled to an Order of Forfeiture consisting of a personal money judgment against the Defendant.

7.  Additionally, the United States should be entitled to forfeiture of certain IP address rights previously held by Defendants used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, violations of 18 U.S.C. § 1343.

**ARGUMENT**

8.  "A district court may order the forfeiture of (1) proceeds obtained as a result of the crime for which a defendant was convicted or (2) property used or intended to be used to commit or to facilitate the commission of the crime for which a defendant was convicted." *United States v. Herder,* 594 F.3d 352, 363–64 (4th Cir. 2010) (citing 21 U.S.C. § 853(a)). The government has

the burden of proof and must establish that the property is subject to forfeiture by a preponderance of the evidence. *Id.* at 364.

9. Under Rule 32.2(b)(1), "[i]f the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." The Fourth Circuit utilizes the "substantial connection" standard under which "the government must establish that there was a substantial connection between the property to be forfeited and the offense." *Herder*, 594 F.3d at 364.

### *There is a Substantial Connection Between the IP Address Rights to Be Forfeited and the Offense.*

10. Defendants pled guilty to devising a scheme and artifice to defraud and obtain IPv4 address rights from ARIN, by means of false and fraudulent representations. Defendants fraudulently obtained IPv4 address rights in two ways. In each instance, Defendants created and utilized Channel Partner companies to obtain the rights to IP addresses that they could not legally obtain. The Channel Partner companies purported to be individual businesses, and Golestan created fictitious persons as the presidents and directors of each of the Channel Partner companies. Initially, Defendants used the Channel Partner companies as a false justification for Defendant Micfo's need for IPv4 addresses. After this initial avenue of fraudulently obtaining IPv4 addresses, Defendants began to apply to ARIN on behalf of the Channel Partner companies themselves for IPv4 addresses. The Channel Partner companies purported to be individual businesses, which required IP addresses, and would apply directly to ARIN for the IP addresses. Specifically, the Channel Partners would complete paperwork, which included the identification of officers, and provide justification for the Channel Partner's need for IP addresses. Golestan created fictitious

3

persons as officers for each Channel Partner company, and at times falsely claimed a need or justification for IP addresses using these fictitious persons and companies.

11. ARIN issued IP address rights to the Defendants by means of standard contracts with ARIN known as a Registration Services Agreement ("RSA"). The RSA, granted to the Defendants a set of rights to specific IP address entries in the ARIN registry database, including the exclusive right to be the registrant of the IP address entries within the ARIN database; the right to use the entries within the ARIN database; and the right to transfer the registration of the IP address entries pursuant to the ARIN policies and procedures.

12. The rights that were conveyed in the RSA do not equate to an outright ownership of the IP addresses, or the entry, as ARIN maintains ultimate control of its registry and there are other registrants with rights that intersect or otherwise impact the Defendants limited rights, including (but not limited to) other registrants benefiting from visibility into the public portions of registry IP address entries.

13. The Government understands that ARIN has revoked all of Defendants' rights to previously obtained IP addresses, including the specific addresses listed in the Indictment. However, Rule 32 provides that the Indictment "need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks." Fed. R. Crim. P. 32.2(a). Moreover, "because criminal forfeiture is remedial in nature, § 853 explicitly states that its provisions 'shall be liberally construed' in order to effectuate this purpose." *United States v. Patel,* 949 F. Supp. 2d 642, 649 (W.D. Va. 2013) (citing 21 U.S.C. § 853(o)). In the Indictment, the Government stated its intention to seek forfeiture of any other of Defendants' property, up to the value of the forfeitable property. Given that contractual "rights" are subject to

criminal forfeiture under § 853, and—as described below—ARIN has held in reserve a portion of Defendants' previously held rights, the Court should find that the Revoked IP Address Rights are subject to forfeiture.

14. ARIN has held the remaining 261,120 IP address rights that it revoked from Defendants on November 23, 2021—after Defendants' conviction—in reserve in cooperation and anticipation of this forfeiture proceeding being completed (hereafter "Revoked IP Address Rights"):

| Net Handle | Org ID | Revoke Date | Network | Prefix | # /24s |
|---|---|---|---|---|---|
| NET-192-240-192-0-1 | MICFO-2 | 11/23/2021 | 192.240.192.0 | 18 | 64 |
| NET-192-255-64-0-1 | MICFO-2 | 11/23/2021 | 192.255.64.0 | 18 | 64 |
| NET-104-143-192-0-1 | MICFO-2 | 11/23/2021 | 104.143.192.0 | 19 | 32 |
| NET-104-156-192-0-1 | MICFO-2 | 11/23/2021 | 104.156.192.0 | 19 | 32 |
| NET-104-207-64-0-1 | MICFO-2 | 11/23/2021 | 104.207.64.0 | 19 | 32 |
| NET-104-222-128-0-1 | MICFO-2 | 11/23/2021 | 104.222.128.0 | 19 | 32 |
| NET-104-222-192-0-1 | MICFO-2 | 11/23/2021 | 104.222.192.0 | 19 | 32 |
| NET-104-247-0-0-1 | MICFO-2 | 11/23/2021 | 104.247.0.0 | 19 | 32 |
| NET-155-254-96-0-1 | MICFO-2 | 11/23/2021 | 155.254.96.0 | 19 | 32 |
| NET-167-160-96-0-1 | MICFO-2 | 11/23/2021 | 167.160.96.0 | 19 | 32 |
| NET-173-44-0-0-1 | MICFO-2 | 11/23/2021 | 173.44.0.0 | 19 | 32 |
| NET-192-171-224-0-1 | MICFO-2 | 11/23/2021 | 192.171.224.0 | 19 | 32 |
| NET-192-230-32-0-1 | MICFO-2 | 11/23/2021 | 192.230.32.0 | 19 | 32 |
| NET-206-223-224-0-1 | MICFO-2 | 11/23/2021 | 206.223.224.0 | 19 | 32 |
| NET-207-189-0-0-1 | MICFO-2 | 11/23/2021 | 207.189.0.0 | 19 | 32 |
| NET-209-209-224-0-1 | MICFO-2 | 11/23/2021 | 209.209.224.0 | 19 | 32 |
| NET-45-62-32-0-1 | MICFO-2 | 11/23/2021 | 45.62.32.0 | 19 | 32 |
| NET-104-128-128-0-1 | MICFO-2 | 11/23/2021 | 104.128.128.0 | 20 | 16 |
| NET-104-128-16-0-1 | MICFO-2 | 11/23/2021 | 104.128.16.0 | 20 | 16 |
| NET-104-143-16-0-1 | MICFO-2 | 11/23/2021 | 104.143.16.0 | 20 | 16 |
| NET-104-237-80-0-1 | MICFO-2 | 11/23/2021 | 104.237.80.0 | 20 | 16 |
| NET-107-181-64-0-1 | MICFO-2 | 11/23/2021 | 107.181.64.0 | 20 | 16 |
| NET-107-182-112-0-1 | MICFO-2 | 11/23/2021 | 107.182.112.0 | 20 | 16 |
| NET-107-190-160-0-1 | MICFO-2 | 11/23/2021 | 107.190.160.0 | 20 | 16 |
| NET-167-88-96-0-1 | MICFO-2 | 11/23/2021 | 167.88.96.0 | 20 | 16 |

| | | | | | |
|---|---|---|---|---|---|
| NET-172-102-128-0-1 | MICFO-2 | 11/23/2021 | 172.102.128.0 | 20 | 16 |
| NET-172-110-208-0-1 | MICFO-2 | 11/23/2021 | 172.110.208.0 | 20 | 16 |
| NET-172-97-80-0-1 | MICFO-2 | 11/23/2021 | 172.97.80.0 | 20 | 16 |
| NET-192-200-16-0-1 | MICFO-2 | 11/23/2021 | 192.200.16.0 | 20 | 16 |
| NET-192-77-240-0-1 | MICFO-2 | 11/23/2021 | 192.77.240.0 | 20 | 16 |
| NET-209-161-96-0-1 | MICFO-2 | 11/23/2021 | 209.161.96.0 | 20 | 16 |
| NET-45-61-32-0-1 | MICFO-2 | 11/23/2021 | 45.61.32.0 | 20 | 16 |
| NET-135-84-208-0-1 | MICFO-2 | 11/23/2021 | 135.84.208.0 | 21 | 8 |
| NET-144-208-116-0-1 | MICFO-2 | 11/23/2021 | 144.208.116.0 | 21 | 8 |
| NET-165-84-224-0-1 | MICFO-2 | 11/23/2021 | 165.84.224.0 | 21 | 8 |
| NET-192-171-24-0-1 | MICFO-2 | 11/23/2021 | 192.171.24.0 | 21 | 8 |
| NET-192-69-248-0-1 | MICFO-2 | 11/23/2021 | 192.69.248.0 | 21 | 8 |
| NET-198-52-32-0-1 | MICFO-2 | 11/23/2021 | 198.52.32.0 | 21 | 8 |
| NET-199-189-248-0-1 | MICFO-2 | 11/23/2021 | 199.189.248.0 | 21 | 8 |
| NET-199-241-120-0-1 | MICFO-2 | 11/23/2021 | 199.241.120.0 | 21 | 8 |
| NET-204-62-120-0-1 | MICFO-2 | 11/23/2021 | 204.62.120.0 | 21 | 8 |
| NET-205-234-120-0-1 | MICFO-2 | 11/23/2021 | 205.234.120.0 | 21 | 8 |
| NET-207-89-16-0-1 | MICFO-2 | 11/23/2021 | 207.89.16.0 | 21 | 8 |
| NET-216-162-40-0-1 | MICFO-2 | 11/23/2021 | 216.162.40.0 | 21 | 8 |
| NET-31-207-0-0-1 | MICFO-2 | 11/23/2021 | 31.207.0.0 | 21 | 8 |
| NET-66-133-72-0-1 | MICFO-2 | 11/23/2021 | 66.133.72.0 | 21 | 8 |
| NET-66-171-32-0-1 | MICFO-2 | 11/23/2021 | 66.171.32.0 | 21 | 8 |
| NET-69-161-192-0-1 | MICFO-2 | 11/23/2021 | 69.161.192.0 | 21 | 8 |
| NET-72-35-240-0-1 | MICFO-2 | 11/23/2021 | 72.35.240.0 | 21 | 8 |
| NET-146-88-192-0-1 | MICFO-2 | 11/23/2021 | 146.88.192.0 | 22 | 4 |
| NET-148-59-232-0-1 | MICFO-2 | 11/23/2021 | 148.59.232.0 | 22 | 4 |
| NET-192-64-24-0-1 | MICFO-2 | 11/23/2021 | 192.64.24.0 | 22 | 4 |
| NET-199-223-116-0-1 | MICFO-2 | 11/23/2021 | 199.223.116.0 | 22 | 4 |
| NET-206-225-132-0-1 | MICFO-2 | 11/23/2021 | 206.225.132.0 | 22 | 4 |
| NET-64-85-24-0-1 | MICFO-2 | 11/23/2021 | 64.85.24.0 | 22 | 4 |
| NET-203-33-152-0-1 | MICFO-2 | 11/23/2021 | 203.33.152.0 | 23 | 2 |
| NET-208-87-164-0-1 | MICFO-2 | 11/23/2021 | 208.87.164.0 | 23 | 2 |
| NET-213-159-14-0-1 | MICFO-2 | 11/23/2021 | 213.159.14.0 | 23 | 2 |
| NET-24-235-4-0-1 | MICFO-2 | 11/23/2021 | 24.235.4.0 | 23 | 2 |
| NET-198-22-224-0-1 | MICFO-2 | 11/23/2021 | 198.22.224.0 | 24 | 1 |
| NET-209-251-249-0-1 | MICFO-2 | 11/23/2021 | 209.251.249.0 | 24 | 1 |
| NET-216-99-219-0-1 | MICFO-2 | 11/23/2021 | 216.99.219.0 | 24 | 1 |

| NET-52-119-3-0-1 | MICFO-2 | 11/23/2021 | 52.119.3.0 | 24 | 1 |

**Revoked IP Address Rights Forfeiture Logistics and Conditions**

15. The Revoked IP Address Rights have significant market value if sold in compliance with ARIN policies.

16. Although ARIN is not a party to this case, ARIN has agreed to comply with a Forfeiture Order issued by this Court directing the transfer of the Revoked IP Address Rights to the U.S. Department of Justice to effectuate a sale of these rights on the following conditions:

    a. ARIN issues to DOJ the Revoked IP Address Rights.

    b. DOJ signs a standard version of the ARIN RSA that is used by U.S. Government agencies.

    c. Once DOJ enters into ARIN's RSA, DOJ could either keep the Revoked IP Address Rights for U.S. Government purposes or sell the rights, subject to, and in compliance with, ARIN's policies and procedures.

    d. Any purchaser of the Revoked IP Address Rights from DOJ shall enter into ARIN's standard RSA and comply with ARIN's policies and procedures.

    e. DOJ could then use the proceeds of any sale of the Revoked IP Address Rights for purposes of making restitution to victims of Defendants' crimes or other lawful purposes.

WHEREFORE, the United States requests that this Court:

a) Enter the Order of Forfeiture consistent with the above conditions;

b) retain jurisdiction in the case for the purpose of enforcing the Order of Forfeiture;

c) include the forfeiture, as set forth in the Order of Forfeiture, in the oral pronouncement of the Defendants' sentence; and

d) incorporate the Order of Forfeiture in the criminal judgment entered against Defendants, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4).

The Government further requests that such order be entered by this Court sufficiently in advance of sentencing to permit time for the Government and the Defendant to suggest revisions or modifications. Fed. R. Crim. P. 32.2(b)(2)(B) ("Unless doing so is impractical, the court must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant under Rule 32.2(b)(4).")

Respectfully submitted,

COREY F. ELLIS
UNITED STATES ATTORNEY

By: *s/Carrie Fisher Sherard*
Carrie Fisher Sherard #10134
Assistant United States Attorney
55 Beattie Place, Suite 700
Greenville, SC 29601
(864) 282-2100

June 6, 2022